My name is Maxwell Bleacher and I'm representing Mr. Clement, who is a trustee in bankruptcy for My Left Took, a motion picture production company. Unlike the earlier cases on the docket, this doesn't present any exciting facts. It's just a plain old contract dispute. But you have an opportunity, applying a de novo standard of review, to correct what has been a manifestly incorrect reading of the contract, which we find in the appellant's excerpt of record page 4, which both the bankruptcy judge, Donovan, and the district judge, Collins, found was not binding or enforceable because it lacked essential terms. Before we look at the contract, see how manifestly erroneous that decision is, I'd like to make a couple of preliminary observations, if you will. Clearly, because no extrinsic evidence was taken, and the decision both by Judge Donovan and Judge Collins was based on the contract standing alone, that is the contract interpretation. It is a pure question of law, and you have, despite the appellee's waffling, you have a de novo right to review the contract and reach a totally independent decision. The second point I'd like to make is Judge Collins, who normally would not make a mistake like this, articulates in her decision, which starts in the excerpt of record at page 270, she articulates correctly at page 272 that there is a de novo review standard with respect to the interpretation of the contract. But when she comes to analyze the case and reaches a conclusion at page 275 in the record, she says, quote, the court finds the bankruptcy court did not use its discretion in determining that several essential terms were not stated in the contract. We concede from that statement that Judge Collins applied an incorrect standard. It was her obligation to review the contract de novo and not to sit as an appellate judge in determining whether there was an abuse of discretion. So I submit to you that her views of what took place are not here entitled to an enormous amount of deference. Would you agree that unless we find there's an enforceable contract, there's no need for us to consider whether, I keep changing this, whether it's my left hook or my left hand, my left hook is a third-party beneficiary? I do agree with that, Judge. Okay. Absolutely, there's got to be a contract before we get to the next hurdle, which is does it cover my left hook? I have another question, and that is that what the bankruptcy court focused on was the absence of things like the amount of the loan, the interest rate, the repayment terms, the identity of the lender, and the time frame for the performance. Yes. If you don't view those as essential terms, I'd appreciate your explaining why. No, I do view them as essential terms. What I'm saying is the contract covers them. It's manifestly wrong to read this contract in any way that leaves open these essential terms. Before I get there, if you'll just indulge me, because California law, the Civil Code Section 1643, and a whole slew of cases, even cases of this Court interpreting California law in a contract context, have said that where the parties manifest an intention to contract, the Court's obligation is to do whatever it can to make that contract efficacious. This Court took exactly the opposite point of view and approached the contract, let's see how we can destroy this contract instead of giving vent to the expression of the parties. Because if you look at AOR-4, both parties to the contract signed it. Now, having given you that background, let's, if we can, look at what the bankruptcy court determined was a lack of essential terms. He says, keep in mind this contract was to finance a motion picture, and the issue here was to raise pre-production, the cost of the pre-production expenses. The first thing they say is there's no amount stated. Well, this is clearly wrong. In paragraph C of AOR at page AOR-4, this is the contract signed by both parties. It recites, Entertainment 2000 will take the lead in funding in advance. Now, just take out the next parenthetical phrase and I'll come back to it. Will take the lead in funding in advance in the amount of up to $100,000 to cover miscellaneous pre-production expenses of the kind of nature normally anticipated in first-rate production, blah, blah, blah. And that is, it was up to the producer to draw down those funds at his discretion. So the amount is clear. There's an agreement to fund the pre-production costs of the kind normally incident to a decent motion picture up to $100,000, and the producer had the right to draw that money down at his discretion. It simply is wrong, manifestly wrong to say the amount was not specified. Now, what both judges below hung up on was this phrase, against any funds it may provide. They misread that to say may was an illusory promise, and therefore there wasn't any commitment. But the parenthetic phrase, against any funds it may provide, only explains that Lappin had an option of either giving the money himself, and as the former owner of the International House of Pancakes, he apparently had that resource, or he could go out to third parties and secure the money from third parties. And to the extent it was money that he advanced, this was going to be a set-off against those monies, and that's what the word may means. It has nothing to do with the firmness of the obligation to produce $100,000 for the pre-production expenses. What does it mean to take the lead in funding? He was the financier, and this is what I'm trying to explain, Judge Graber. He had an option either to put up the money himself or with his own associates, or to go out to third parties and raise it.  But he could do it either way he wanted. He was not limited to producing his own money. He could go out and raise it from third parties. Now, the judges below said this contract doesn't provide for interest. This is a specious argument. If you look at it, the first thing is, in paragraph A, there's a 1.75 fee right off the bat, or what would be $1,750, I guess, out of the $100,000 is a fee. But more importantly, if you look at paragraph B, the financier is given a 20% ownership interest in the picture. So he owns 20% of the motion picture. So he's getting a financing fee up front and 20% of the motion picture in return for putting up to $100,000 for pre-production expenses, which is normally a fairly limited time period. So if you look at that contract wholly, does it reflect an ability of the parties to have agreed to waive, quote, interest for six months if the consideration for the giving of this money is a 20% ownership in a motion picture, which planned the star Robert De Niro? Then they said there's nothing in here about repayment. Well, what could be plainer than looking at the last sentence of paragraph C, entertainment 2,000 and or the interim lender? You see, Judge Graber, that's what I mean. Either entertainment 2,000 or some other interim lender could have raised this money. It wasn't limited to entertainment 2,000. We understood they could go out and get a third party in. So entertainment 2,000 or the interim lender will recoup said funds from the production budget of the picture. Couldn't be clearer. Once the pre-production was over and once the picture went into production and the production budget kicked in, they would get their $100,000 or whatever they lent right out of that fund. Couldn't be clearer. Then they said below there's no lender identity. The lender is entertainment 2,000. Or if they got some third party, it's covered by the phrase interim lender. Clearly identified. And then they said there's no time for performance. Well, of course there's a time for performance. If you're in the motion picture trade, you understand pre-production is a period usually covering six months or eight months before you actually start the shooting. So that's the period during which this money was to be lent, to be repaid once the shooting started out of the production budget. So it's plain to me that anybody reading this contract would say all the essential terms are here. None of the positions Judge Donovan took, in my view, are sustainable by a fair reading of the contract. But even if there were some question about the lack of terms, this Court's view expressed in other cases, in the view of the California courts, is quite clear the Court should have provided those essential terms to give them to the parties. And Mr. Lappin understood that he had a contract because when Mr. Pritchard asked him where's the money, he'd said, I don't have the money. He didn't say, he didn't say, I don't have a contract. He said, I don't have the money. Now, it's correct that the judge did not accept his testimony, found it to be hearsay. That's wrong because the statement is offered to prove not the truth that he didn't have the money, probably he did have the money. But the statement was offered to prove his state of mind. He should have responded to Pritchard, we don't have a contract. I don't have an obligation. But he didn't say that. He said, I don't have the money. So he understood that there was an agreement. He simply wasn't performing it. All right. So go on. I'd like to ask you, because you are getting into your minutes, I do have a question that I want you to address. The appellee is asking for sanctions. Yes. What's a little bit unique about this case is because you start in the bankruptcy court, you lose there, and then you lose in the district court. At what point, absent new authority to address, at what point are you on notice that you're not going to win, you know, that it could be a frivolous appeal? The decisions below, I think, are close to frivolous. With a de novo standard of review, there can't possibly be any bad faith. I can look each one of you in the eye and tell you with conviction that if you read this contract between these parties, it contains every essential term that the courts below said was lacking. And if there is some lacking, it's the court's obligation to fix it, even to the point this court said in the Del Coronado case. Well, what about, okay, the fact that you believe that, but what if you lose in ten courts, in the 11th court? Why would you sanction us for making the good-faith argument that on a de novo review, every element of this contract is satisfied facially by looking at its four corners? So your argument is if it's de novo review, you can never, it can never be a frivolous appeal?  No. I couldn't go that far. I could probably conjure up a fact situation where there was no basis. Okay. Well, I just wanted, I wanted to hear your answer on that. You can't look at this contract. In my opinion, you can't look at it and say it lacks all these terms that Judge Donovan said were lacking and that Judge Collins looked the other way and said, well, that's his discretion, which is not what her job was. Her job was to look at it herself and reach an independent conclusion. Well, the last conclusory statement is there, but when you look at that order, there, you know, time after time, the Court really determines that there isn't the evidence there to support those findings. Yes. Well, in that event, she's manifestly in error and your de novo review should correct it. But I do say to you, Judge Gibson, these are not findings and these are not determinations. All this is is an interpretation of the writing. There's no extrinsic evidence here. If there were extrinsic evidence, it might have been justified for someone to make, quote, findings. But this is looking at the contract and saying, are the essential terms of the contract in the California law provided? And that's a pure question of law, and you're able to do that and should do that under this appeal, independent of what the lower courts have done. Third-party beneficiary. Now, that's a slam dunk. If you look at the contract, it says subject out on my feet. That's the name of the movie. My Last Hook is the name of the production company. If you look at paragraph B, it says Entertainment 2000 will be granted a 20 percent interest in the project. What's the project? It's the motion picture out on my feet. What possible argument is there that this contract, and they're financing a motion picture. What's the name of the motion picture? Out on my feet. What possible argument is there that out on my feet, that out on my feet is not a third-party beneficiary of this contract? Even though you have exceeded your time. And I think we understand your position. Thank you. May it please the Court. My name is Ronald Palmieri. I am representing the attellees in this matter. Your Honors, I think that what is omitted here, and Mr. Bleacher is new to this case and just did the oral argument. He misunderstands the lower court rulings. He misunderstands the findings of fact and conclusions of law that were reached by Judge Shoneman. He refers to Judge Collins' case decision, which this Court is entitled to review de novo. But if you'll note in your record, it appears, I guess inadvertently, that when Judge Shoneman made the omitted page 6 of her decision, I have that here with me today if the Court wants to have a copy of it. In that, before she indicates that Judge Shoneman did not abuse his discretion, she goes through and she makes factual findings herself as to why the contract was unenforceable. I assume it was an inadvertent omission, but I find it curious that the one page where she makes that determination happens to be missing from the appellate's record. The critical understanding here is to look at Judge Donovan's ruling. And Judge Donovan maintained that all parties understood that Mr. Lappin and Lambert were going to assist in obtaining financing. Nothing else. If you start with that, and that's located on pages 16 through 17 of our brief, the Court indicates at the record, indicates that Lappin and Lambert told Pritchard and Eccleston that Lambert were capable of generating an investment to make the picture  However, Eccleston's understanding was that Lappin would be involved in helping to find distribution, help to find banking, interim financing, and to help finance the the help find financing upon the contract. The Court's determination and the ruling by Judge Donovan, which was critical, was found in the record at page 212. The Court says there is no evidence offered by the plaintiff that supports any conclusion other than the conclusion that derives from Plaintiffs' Exhibits 1 and 5 that they were, Lappin and Lambert, Entertainment 2000, were interested in arranging financing and in helping with drafting the papers. That's what they were. They were financiers. They were not lenders. And no matter how many times Mr. Harris brings this up and how many times he tries to contort it, it cannot change. Counsel, one of the things that is a question in my mind, I'm very unfamiliar in real life with the entertainment industry and how things are done. And in various industries, there are varying degrees of precision in contract drafting and there are varying styles of contract drafting. What does the record tell us, if it does, as to how the Plaintiffs' Trial Exhibit 21, I guess the document that we're talking about, how that compares to what similar documents look like in the industry and whether those are considered to be binding contracts in the manner that the opposing counsel has been discussing? There was no evidence to support any finding other than what Judge Donovan found. There was no evidence presented by the plaintiffs that this was a standard agreement because it was not. The court found, and this is at page 21. Well, you're saying it's not, but you're also saying there's no evidence. So which is it? Is there evidence about whether it is or isn't standard? I don't believe any evidence was presented by the plaintiff to indicate that it was standard and had such evidence been presented, I could have rebuffed it. Well, okay. I understand what you're saying. So as far as we're concerned, we don't know because the record doesn't tell us if this is the way things are done or not. Again, the argument was not advanced by the plaintiffs, so it was not discussed. The court did find, however, in the record and on page 28 of our brief, Lambert and they refer the same thing to Laffin, agreed to arrange for loans and to draft agreements with lenders and not much more for a fee. The evidence would not support the finding that Laffin agreed to do anything but arrange loans and perhaps draft lenders' papers. There was extrinsic evidence considered by the court. The court considered the intention of the parties as is important in determining what the mutual intent was to form a contract. The court found that these, the parties only agreed that these people would be financiers. The critical element also is that you have one of the three documents that signed and one is not, one document isn't signed, right, and it requests send it back if you agree and sign it or something. That was an exhibit where MLH tried to get Mr. Lambert to agree to fund and he declined to sign that document. That was an exhibit that was proposed. The two other exhibits are the contract that is being spoken about by the appellant. The other thing that I'd like to draw the Court's attention to is at page 23 of our brief, which I think is critically important, because as I said, if they were not obligated to fund at all, which the Court found on various occasions, as did Judge Collins, why didn't they fund? And if you look at page 20 or you'll, I'll refer the Court to page 23 of the brief where the Court made another critical finding, and that was that the reason that the funding didn't occur was because My Left Hook did not perform conditions it had to. And so the producers of OMF made it impossible for Lappin and Lambert to obtain from anybody the financing necessary to produce the film because the producers did not deliver all of the required elements, such as assembling a full cast. This was a finding of fact by Judge Donovan. So even if you assume their argument that there was an obligation to fund, which there was not, and you go on to the fact that they were something more than financiers, which they were not, their obligation to fund would have had to have occurred subsequent to what the appellant's obligations were, and they did not perform. So that should end it even there. There was no evidence of a representation to fund. And what the Court found below, both Judge Collins and Judge Donovan, was that there had to be a stated representation or an intention, and they found no evidence of that. Let's turn to third-party beneficiary. The Court found that the appellees were not aware of the creation of MLH or otherwise, that it was not an intended third-party beneficiary. Page 34 of our brief clearly establishes that the Court found that the appellant was arguing that the contract was made for the benefit of whatever entity was formed to proceed on the production. However, there was no evidence that the principles of MLH ever communicated to any of the defendant appellees their intention. Also, as I noted, if you look on pages 16 through 17 of our brief, the appellants in this matter or the principles of the appellant in this matter all understood that my clients were merely financiers, and they had no intention of funding themselves. As such, the conclusion is only that the judge reached was that there was no evidence to support the conclusion that defendant appellees were aware of the formation of MLH when it occurred. What they're trying to suggest is that after signing this vague agreement with Mr. Pritchard, this entity could have formed whatever it wanted. In other words, it could have joined with a cartel in Columbia. It could have been an offshore company in British Virgin Islands. It could have been anything. And all of a sudden, that entity rises with my clients not knowing about it, not knowing who's involved, not knowing the principles, not knowing what other types of businesses it was in. It becomes a third-party beneficiary. That's not what the law says. As to the vagueness of the contract, well, with all due respect to Mr. Bleacher, there is no enforceable agreement here. The Court rightfully looks at what Judge Donovan did and Judge Collins. It said they may, may, permissive, may take the lead and may fund up to $100,000. There was never a demand. And again, Mr. Bleacher cites the record saying that the examination of Mr. Pritchard where he says something effective, I asked him for the stricken. And number two, as Mr. Bleacher should know and what Mr. Harris certainly knows, is that the evidence that was not considered by the Bankruptcy Court down below, where Mr. Pritchard states that they were merely financiers and they owed no obligation of mileage hook at all. This case is frivolous. One of my clients, Mr. Miles. Well, let me ask you, you've just said the word that I want to talk to you about because you've asked for sanctions. Yes. Do you have any authority for an award of sanctions pursuant to Federal Rule of Appellate Procedure 38 by a court of appeal based on the frivolity of an appeal in the district court as opposed to the frivolity of an appeal before the appellate court? We have, we have sought sanctions on the district court level as well as on the appellate level. Well, at the district court level, isn't it more, wouldn't it have been more appropriate for them to? We understood from the rules of this Court that both of these, since the appeal was timely taken, that both of these requests would be made to Your Honors. To the extent you feel it's appropriate for Judge Collins' rule, I would suggest that that portion be remanded. However, I would cite the Court again to our motion where this is not the first time Mr. Harris has done this. Mr. Harris did this previously and on page 8 of our motion in the case of Durer v. Intercounty Title Company of Illinois, he was sanctioned.  So what relevance does that have here? Because it shows a pattern, Your Honor. It shows a pattern. This case has been going on for seven years. My client, Mr. Lappin, spent the last two years of his life dying of cancer and has died while this man continued to prosecute frivolous actions. My other client is almost forced into bankruptcy. This man should be stopped and he should be sanctioned. This is completely frivolous. Judge Donovan spent weeks on this. If you look at the beginning of his judgment and what he says. Well, you know, we are here, all of us judges, to when people bring lawsuits to us and it takes time and it's very frustrating for parties. It's very frustrating for parties who win as well as parties who lose. Sanctions are a very rare event and our cases suggest that they have to be based on what's in the record of this case, not on the frustrations of the parties or counsel, and not on the basis of other cases unless the circumstances of those cases are in this record. So other than the fact that you believe you have a clear-cut winning argument here, which may be true in half the cases we hear, what specifically would justify sanctions here? Other than, other than that you think you have a clear winning case. I believe that it can be imputed to counsel, Mr. Harris specifically, because Mr. Pletcher is just doing oral argument, that he knew this case was a loser, that he knew that he had no rational basis for this. The contract is clear on its face. The law is clear on its face. So we would have to find that he has no rational basis to think that this Court might reverse the district court or the bankruptcy court? I do not. I do not believe that the standard is no rational basis. Mr. Harris is a seasoned attorney. He knows what he is doing. This case was dragged out. If you look at page 178 of the record, Judge Ottoman. Can you show anything? Is there anything in the record that would indicate that this has delayed the bankruptcy proceedings? Well, the bankruptcy, this was an adversary proceeding, so it did not have impact. We took up an enormous amount of Judge Ottoman's time. As a matter of fact, he states in the record at page 178, I have had a chance to review all the papers for and against the motion, and really I've read them extensively. I've also read the two or three feet of evidence binders that I have sitting on my desk extensively. I've read the pleadings. I've read the packet. I spent a lot of time preparing for this hearing. It took him weeks. The evidence in this matter, Your Honors, was enormous. And then to bring it up to district court with Judge Collins independently making the exact same determinations, it was a shock to him to say, okay, stop. But no, he didn't. Counsel, are you aware of any cases that this Court has reversed where the district court and the bankruptcy court have both come to the opposite conclusion? Because I can think of, you know, one or two examples in my own experience. So it can't be true that merely bringing an appeal where somebody has lost so far suggests bad faith. There has to be something more than the fact that they've lost because everybody who brings an appeal has lost. Absolutely. And there is something more here, Your Honor. The two issues are clearly established by the law. This is not a contract. It did not have an interest rate. It did not have a set time. It did not have a lender. The law was clear to Mr. Harris at that point. He was told once by Judge Donovan. The law was the same then. He was told again by Judge Collins. The law was the same then. And he comes up and he spews the same arguments that he did there. The contract that existed was unenforceable. It has no date. It has no term. It has no amount. It's permissive. There's no contract here. My left hook wasn't even formed, so it was not a third-party beneficiary. Faced with that, the court in Glansman v. Unirol says the decision to appeal should be a considered one, not a knee-jerk reaction to every unfavorable ruling. I don't even think this was knee-jerk. I think it was malicious in order to get my clients to finally fold and settle, which they never have. Well, I understand that's how you feel about it, but we have to have more than your feelings. We have to have evidence in the record that that's the motivation. Beyond the fact that your argument for the sake of this discussion is correct, that is, that the appellee should gain an affirmance. Well, I believe that, again, if the law hasn't changed and the facts haven't changed and what your colleague indicated is clearly appropriate, what do you bring before this Court? What new theory, what new argument that or what new twist on the argument do you bring before this Court that would be any different to lead you to the conclusion that any other judge is going to rule differently? And if that doesn't exist, which it does not, and if this doesn't, you know, if that didn't exist when he brought the appeal, which it did not, he should be told that this is inappropriate. Read the case, Mr. Harris. Read the judge's decisions. The judge who took weeks on this, Judge Donovan, took an extended amount of time. And just don't bring it to the court. Well, judges are supposed to spend the amount of time a case takes. I mean, that's an interesting argument. But, I mean, that's what we all do. I understand, Your Honor. But after two well-respected judges spend that much time, sit back and reflect as to whether or not you want to see others. Even those of us who have been well-respected sometimes get reversed. I understand. Even when we think we might have been right. I understand, Your Honor. Courts and appeals judges get reversed, too. We've been there. Thank you, Counselor. Your time has expired. Thank you very much, Your Honor. Mr. Bleacher, we'll give you one minute for rebuttal. I appreciate that, Your Honor. I have four minutes for rebuttal. Wait until Mr. Palmieri is out of the box there. Thank you. I just want to ask one question. Where is the page 6? I mean, I look at the record here, and I see that there is a page 5 and a page 7, but no page 6. I have page 6. Well, after the conclusion of argument, if counsel will show that to opposing counsel, and if everyone agrees, don't do it now, please. After the conclusion of argument, assuming everybody agrees that that is what page 6 looks like, would you please give three copies to Mr. Garcia, and he will bring those to the Court. Thank you, Your Honor. I just want to make four discrete points very quickly. The first is counsel cites the testimony. The testimony is irrelevant. Judge Donovan and Judge Collins did not look at any testimony. They decided, as I submit you should decide, the validity of the contract. On the face of the contract by its four corners, no testimony was relied on. Remember it below. You've out of time, so if you want to make your other points, you may make them each very quickly, please. He calls this person a financier. Yes, he's a financier. He was to raise money, got 20 percent of the picture. The last point is, on the third-party beneficiary, let's just put the shoe on the other foot for a moment. Let's suppose they did raise the money, and they came along and said, give us 20 percent. You said to them, oh, but my left hook isn't named in here. What would you do then? It's a preposterous position. Thank you, counsel. We appreciate the arguments of both parties. The case just argued is submitted. We will stand adjourned. And if counsel will confer, and to Mr. Garcia, if you'll stay long enough to see that that's done. Thank you. All rise. Thank you.
judges: Gibson, Graber, Callahan